last case to be heard, which is the arguably related case of Graham against Garland, 18-1835-AG and 19-223-AG. And Ms. Williams, you're up for the appellant again. I may just have one moment, Your Honor, so I can switch the outlines. Are you ready to go? Okay, great. All right, let's begin. Let's take it from the top. Good afternoon, Your Honors, and may it please the court. Again, my name is Alyssa Williams, and I represent pro bono the petitioner, Mr. Kimani Graham, in this matter. I would also like to reserve two minutes for rebuttal. Your Honors, there are three issues facing the court in this petition. The first is whether the elements of Connecticut General Statutes 21A-277A do not match the definition of a federal controlled substance offense and therefore do not fall within the grounds of removal under the INA. The second is whether Connecticut General Statutes 29-38 does not meet the definition of a federal firearms offense under the Immigration and Nationality Act because this statute is indivisible and criminalizes objects such as a police baton, nightstick, or knife. And third is whether the document served on Mr. Graham in this case did not comport with the requirements of a valid charging document and therefore the Immigration Court did not have jurisdiction over removal proceedings, as supported by the recent Supreme Court decisions in Pereira and Ms. Chavez. As to the first issue before us, Your Honors, a proper application of the elements-based categorical approach requires a conclusion that Connecticut General Statutes 21A-277A creates a single crime with two elements and the nature of the substance involved is not an element of the conviction. We know this, Your Honors, from looking at the Supreme Court and this court's case law. Where we would start is with the structure of 21A-277A as a whole. We see that Subpart A is the crime that punishes conduct relating to any hallucinogen or narcotic and Subsection B is the crime that punishes all other controlled substances that are not hallucinogens or narcotics. The statute is simply divided into a Subsection A for any hallucinogen or narcotic and a Subsection B for any other substance. The punishment scheme also supports this understanding of the structure of the statute. What's set forth specifically in 21A-277A is the fact that the punishment varies based on the number of offenses that a defendant has on his record, how many prior offenses the person has. Punishment does not vary based on whether the substance is hallucinogen or narcotic, nor whether the specific identity of the hallucinogen or narcotic. The Supreme Court in Mathis tells us that the punishment structure is important to understanding a statute's elements. What we also have, Your Honor, is in Harbin this court similarly found that because the punishment was the same no matter what the controlled substance the defendant had sold, it supported the court's conclusion that the specific identity of the controlled substance was not an element of the offense and rather was a means of committing the offense. We can also look, Your Honors, to the hypothetical that is used by the Supreme Court repeatedly in its cases and the respondents' arguments in this case run contrary to what the Supreme Court tells us. In Mathis, the Supreme Court used a hypothetical that it had invoked in Descamps and prior to that in Richardson v. U.S. This hypothetical of a statute that says someone commits assault with a deadly weapon and the statute indicates that the person had a knife, gun, bat, or similar weapon to meet that element. The Supreme Court in Mathis reminds us that that kind of list merely specifies the diverse means of satisfying a single element of the crime. Otherwise said, it spells out the various factual ways of committing some component of that offense. In this case, the phrase in 21A.277a, any controlled substance that is a hallucinogenic substance or a narcotic substance is setting forth the ways in which the controlled substance element of 21A.277a can be met. In fact, in Harbin this court when it was looking at controlled substance offenses also relied on that same hypothetical and found it pertinent to this court's analysis. The Connecticut case law, Your Honors, also supports a holding that the specific identity of the controlled substance is not an element of the offense. If we look at State v. Rawls, a Connecticut Supreme Court case dating back to 1985, the Supreme Court tells us that the lesser included offense of the statute that we're discussing here today, that the lesser included offense does not have as its element various substances. So the court tells us that merely because one element of a single criminal act embraces two persons or things does not mean that they can carve out two offenses by charging the various things alleged. So the court tells us that you cannot be charged with multiple crimes for possessing different illegal substances, even if one is narcotic and one is a hallucinogen. And similarly, that's indicative to how we should interpret this statute at hand, 21A.277a, which the lesser included offense is part of. You're saying that they're not divisible for purposes of stacking punishments. Is that the point you've just now made? Well, that the Supreme Court in Connecticut, Your Honor, has said it's not divisible when we're looking at it for purposes of possession. And therefore, there's nothing to indicate that it should be different when you're looking at it for purposes of the statute  Well, but you just previously, just within the last minute, I think, said that the statute won't support separate punishments. Right? I must have misspoken, Your Honor. Oh, I'm sorry. In any event, focusing on divisibility, maybe perhaps you should just back up a step and restate your theory why this subdivision is not divisible into two parts. Never mind the government's rather extravagant hundred part argument. Let's just focus on two parts. Yes, Your Honor. That it's not further divisible that 21A.277a has two elements. First, that a defendant engaged in one of the listed prohibitive acts. And second, that it involved any consoled substance that is hallucinogenic or narcotic. And the main arguments that the Supreme Court in Mathis would tell us to look at is that we can see just from the structure of the statute, the structure of 21A.277, which is divided into a subpart A, we're discussing here, and a subpart B. It's not further divisible. Wait a minute. You say it's not further divisible. That's the question. And so when it says it covers narcotics and hallucinogenics, that begins to sound like two categories, does it not? Sure, Your Honor. It doesn't say narcotics including hallucinogenics. It doesn't say hallucinogenics including narcotics. It says one or the other. What it says, Your Honor, is any controlled substance, any that is hallucinogenic or narcotic. Otherwise, something else is prosecuted under subsection B. I understand. We go to B for anything else. But in A, we have two different categories, right? No, Your Honor. Simply that word or, which seems to be part of the issue here, Mathis reminds us that this is just because the statute has the word or in it, that it's alternatively phrased, does not mean it's intending to create two separate elements. Well, maybe it doesn't always mean it. But when the thing before the or is narcotics and the thing after the or is hallucinogenic, which are quite different, doesn't that suggest it's divisible into those two categories? No, Your Honor. I think just the fact that hallucinogenic is different from narcotic, we can take it to the very simple hypothetical we were just referring. Just because a knife is very, very different from a bat didn't mean it suddenly created two separate elements. Well, that statute didn't say bat or knife, did it? I believe in the Supreme Court's analysis, it does say or. Between bat and knife? Right. That if we're, what we're talking about is, this is just an example of how a statute can list various factual means. You mean if a statute, if a statute wants to say it covers weapons such as gun, knife, bomb, six other things, or a seven. Those are obviously illustrations of the broad category. This doesn't say it covers substances such as A or B. It says it covers A or B, right? That's its structure. Your Honor, it says that it's any hallucinogenic that is a controlled substance, that any controlled substance that is hallucinogenic or narcotic. And again, I think if we draw ourselves out to the Connecticut case law, we see that in Connecticut, a person is not prosecuted under 21A, 277A, in one case for taking an action with a hallucinogenic, and then 21A, 277A as a separate crime for taking one action with a narcotic. Is it fair to say on this record when he entered an Alfred plea, he was saying, I do not dispute the state's claim that I trafficked in a narcotic? No, Your Honor. Not fair to say that? What else did his Alfred plea mean? Perhaps, could Your Honor repeat the question? Can we take it that his Alfred plea meant, I do not dispute the state's allegation that I committed a trafficking offense involving a narcotic? No, Your Honor. This court in Savage, I believe, says that we must arrive at a different conclusion when we look at the Alfred plea. They said, because Savage entered an Alfred plea in which he refused to admit his participation in the acts constituting the crime. No, I didn't say admit. I said refuse to dispute. I'm sorry, Your Honor, that perhaps I'm not understanding the distinction. Well, his Alfred plea, you can't just say, oh, he's just standing there as if he's silent. He's not silent. He is uttering words which result in his being convicted and punished for something, right? Correct, Your Honor. It isn't the legal significance of his Alfred plea that he does not dispute what the state is alleging. Otherwise, he can't be convicted without a trial if he were disputing it. No, Your Honor. I think what Alfred tells us is that what he's not disputing is that he's being convicted under 21A.277A. Beyond that, that he's not admitting to any of the facts as alleged by the state. Well, you keep coming back to admitting, and I keep trying to draw your attention to the Alfred consequence of not disputing. He's not dismissing it as narcotic, but the state comes to him and says, we think you sold a narcotic, and he says, I don't dispute that. I don't admit it, but I'm willing to be punished for it, and I'm not disputing it. Isn't that what happened here? Your Honor, I guess the reason that I keep relying on that word admission is because that is what's used by this court in U.S. v. Savage, specifically said that there were no factual admissions that could be... Sure, if we were holding him to an admission, you would be correct. I'm not suggesting he admitted anything. I'm suggesting he declined to dispute what the state said he did, and thereby subjected him to punishment. I don't believe that is the interpretation that is given by this court in Savage and by this court in Alfred, but I think to Your Honor's point, what we first look at is whether or not the statute is divisible, and we don't need to look at the record of conviction in order to make that determination. Thank you. Thank you very much. We'll hear from opposing counsel. May it please the court, Your Honors, Tim Ramnitz on behalf of the United States Attorney General. In this immigration case, the board properly found that the commissioner's conviction for possession for sale of a narcotic substance rendered him removable as a non-citizen convicted of a controlled substance offense. It's a categorically controlled substance offense, and if we have to get to the modified categorical approach, it's also a controlled substance offense under the modified categorical approach. Categorically, the petitioner argues that his offense is not categorically a controlled substance offense because there's three substances he alleges are covered under the definition of a hallucinogenic narcotic that were not on the federal schedule at the time of his conviction. These substances are TF-NPP, salvinoramane, and salvinoramine. However, he does not point to any statutory language that classifies any of these substances as a hallucinogen, and that seems to be what all former petitioners try to—he thinks they are. You'll see in their opening brief, he's a bit cagey about whether or not he's asserting these substances are narcotics or hallucinogens. But after amicus filed their brief, and after the respondent filed their brief, you see in their reply brief, they seem to fall back on the position that these are hallucinogenic substances. They have nothing from the state of Connecticut saying that these are hallucinogenic substances. That's how they prosecute them. And the government actually submitted contrary notions on state websites. We kind of get to say TF-NPP, for example, is not a hallucinogenic substance. But I think the best case that exemplifies what petitioners are trying to do is a case cited by all the parties, Gauss v. Ashcroft. This court looked at the same Connecticut statute based on a 1997 conviction, and the petitioner was trying to make the same argument, but it was a little different. They were arguing that they had some substances they claimed were narcotics. All they had to show that these were classified as narcotics was a psychiatric article they submitted, and they cited to in their brief. And this court specifically said, unless you can show a case that these drugs are prosecuted as narcotics, we simply have no basis to conclude that these drugs you're offering come under the definition of narcotics. Gauss v. Ashcroft also contains a very helpful footnote, footnote three. That deals with the definition of hallucinogens. In that case, Fisher admitted that the definition of a hallucinogen was coextensive with the definition under the federal government's schedules. But the reason why they did that is because it was based on a case called state brief rate test that explained that the definition of a hallucinogen is very limited by statute under Connecticut law. There's only four exemplary drugs that are defined as hallucinogens. LSD, mesquine, peyote, and cyclophilin. And that case that Gauss cites in footnote three states that otherwise, Connecticut decides they're hallucinogens based on a case-by-case basis. Fisher can't point to a single case where the three drugs he pro-offers are prosecuted or classified as hallucinogens. And he can't point to any statutory text that these three drugs are classified as hallucinogens. And meanwhile, he never has alleged before the court that the definition of narcotic is over-broadened. With the consequence that he is categorically removable as a non-facing convict of a controlled substance offense. Moving on to a modified categorical approach. As Judge Newman was discussing with Petitioner's counsel, which the government wins on as well, agrees that this is divisible into two separate crimes. One, possession for sale of a narcotic. And two, possession for sale of a hallucinogen. And every indication in Connecticut law states that they are separate crimes. And you'll see once the government alleged this in their answering brief, Petitioner had no good response to this in their reply. They hardly addressed this issue. Because there really is no response. Legislative history, statutory text, all state that these are two separate crimes. While the kind of Petitioner's conviction is to use disjunctive text as Judge Newman noted, which indicates that they're separate crimes. Connecticut is even more clear to Petitioner's conviction when it created specific subsections for each subset of drugs. Subsection A, narcotic. Subsection B, hallucinogen. And legislative history for this amendment said this was meant to reflect what has been going on in Connecticut law for years. They punished or prosecuted these two crimes as separate crimes. Petitioner's record of conviction. So if we're divisible between these two separate crimes, we can look to the record of conviction. The record of conviction, specifically the information, the charging document in this case, states that Petitioner was convicted and charged with possession or sale of a narcotic. He's never alleged, not before the court, the definition of narcotic is overbroad. Again, he's only exposing hallucinogens. He was convicted of possession or sale of narcotic, however, and there was any overbroad narcotic. So the case is over for him at that point as well. And moving on to the third part of this case, there is a divisibility question whether or not it's further divisible after that into drug identity. Whether or not drug identity is a divisible element of this crime. And I know Judge Newman had a thing, but this is very common in the courts of appeals. The Ninth Circuit has found all of California's health and safety codes, which cover drug trafficking crimes, to be divisible in this manner, to be divisible into all the different substances. And here, we're actually looking at the entire controlled substance schedule of Connecticut, but two very limited subsets, narcotics and hallucinogens. So not only has this been a successful claim in other states that drug identity is a divisible element, here it's even more limited. It could be 100 different narcotics, but that's not really what we see in Connecticut's schedule. We have a list of narcotics, and we have a very small list of hallucinogens. And we have case law, as Mathis describes, as Petitioner's Counsel describes, we start with this text. The text is not very helpful, granted, on whether or not drug identity is divisible. But moving to case law, they have really no answer for State v. Hill, which is from a Connecticut Supreme Court. Amicus describes this case as a wrinkle. They admit irreconcilably it would lead someone to conclude that drug identity is an element. But then they just go on to cite a bunch of lower opinions from the Connecticut courts. And so does Petitioner. We don't care what the lower courts of Connecticut say. Mathis instructs us to look at the highest court in Connecticut, which is the State Supreme Court. State v. Hill seems to pretty clearly state that you could have multiple convictions out of simultaneous possession of different narcotics. State v. Hill was heroin and cocaine. That's a very typical combination. And they said you could have two separate crimes based on simultaneous possession of different drugs, meaning they specifically said each crime has proof of the fact the other did not. You have to prove heroin in one. You have to prove cocaine in the other. That would seem to indicate drug divisibility. And you can look at the record of eviction again. And we get this plea colloquy. He does emphasize the Alford plea and U.S. v. Savage. Amicus also relies on U.S. v. Savage. Savage does state that you should not rely on a plea colloquy for facts. Savage goes on to look at the plea colloquy for narrowing of the elements, which is what we're looking at here, looking at elements, not facts. And Savage goes on to look at whether or not the plea colloquy as described by the prosecutor or the judge narrowed the definition of sale. That was what was at issue in Savage, was whether or not the definition of sale was overbroad and whether it was divisible. They looked at the plea colloquy, and they said it was divisible, but it just wasn't stated in that plea colloquy what type of sale it was. Our plea colloquy, we have the drug. That's cocaine. Unless the panel has any questions, the government's out of time and will rest. Thank you, Your Honors. Thank you, Your Honors. And just very briefly, I'd like to respond to the government's first contention that there's not evidence in the record to show that the overbroad substances in the Connecticut schedules are regulated as hallucinogens. And Your Honors can see, as referred to in the opening briefs, that part of the evidence that's in the case certainly is a sentencing memo from the U.S. Attorney's Office in Connecticut that indicates that one of the substances, TMFPP, is regulated in Connecticut as a hallucinogen. And furthermore, the Connecticut Department of Consumer Protection in their controlled drug schedules violations and penalties chart, which the government referred to in his argument, that same chart likewise shows that two of the additional overbroad substances we mentioned, salvia divinorum and salvinorum A, are regulated in Connecticut as hallucinogens. In addition, certainly the expert analysis by the amicus that has intervened in this case that has gone through a line-by-line analysis of the Connecticut schedules and compared them to the federal controlled substance schedules and has said that the overbroad substances identified are chemically within the categories of narcotics and hallucinogens prohibited by Connecticut. Setting that aside, Your Honor, however, I would note it's interesting that Respondent continuously in this case states that petitioner cannot point to particular cases or cannot point to particular evidence. And previously we saw that the government's counsel was trying to invoke Parada to raise burden of proof issues. And I would just remind Your Honors that in this case, it's the government's burden to prove by clear and convincing evidence that Mr. Graham is removable under this statute. So, in fact, in this case, it would be the government's burden. But setting that aside, we don't believe that this is a burden of proof issue. We believe that these are legal questions here that we're dealing with when we're looking at the divisibility or indivisibility of a statute. And Your Honors, just to wrap up, I would, again, very much the government relies heavily on State v. Hill to say that you can have multiple convictions and that there are two separate crimes. And Your Honors, I would ask you to look at that case and note that there were two separate crimes because there were two separate statutes. If the government's interpretation was correct, the defendant in State v. Hill could have been prosecuted under 277A twice, and that was not the case. He was only convicted because there were two separate Connecticut statutes that he was prosecuted and convicted under. Your Honors, 21A, 277A creates one crime. The elements of that crime do not categorically correspond to a controlled substance offense. And as a result, Mr. Graham, who has resided in the United States since the age of 11, graduated from high school here, and is now working in raising two U.S. citizen children as a lawful permanent resident himself, is not removable from the United States. Thank you very much, Ms. Whitley. Thank you, Your Honors. We'll reserve decision in Graham v. Garland as we did in Cherry v. Garland and Rice v. Hernandez. There was one case on submission. That's 20-2825-CR, USA v. Alcazar. That's A-L space capital K-A-S-S-A-R. And we'll take that on submission as well. We are adjourned. Court stands adjourned.